UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ISTVAN MERCHENTHALER,　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　　　)　　CIVIL ACTION
UNITED STATES OF AMERICA,　　　　　　　　)
AMY FOURA-WHITE, in her official capacity,　)　　Case No. __4:19cv471__
B. BEAVER, in his official capacity,　　　　　)
DOUGLAS K. WHITE, in his official　　　　　)　　EXPEDITE 28 USC 1657(a)
　　capacity,　　　　　　　　　　　　　　　)
JUSTIN RAY ORMOND, in his official　　　　　)
　　capacity,　　　　　　　　　　　　　　　)
M. BLACKWELL, in her official capacity,　　　)
M. WASHINGTON, in his official　　　　　　　)
　　capacity,　　　　　　　　　　　　　　　)
　　　　　　　　Defendant(s)　　　　　　　　)

**FILED**
**SCRANTON**

MAR 15 2019

PER _____

DEPUTY CLERK

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, ISTVAN MERCHENTHALER ("Istvan") brings this action against the
Defendant(s) UNITED STATES OF AMERICA, AMY FOURA-WHITE, in her official capacity,
B. BEAVER in his official capacity, DOUGLAS K. WHITE in his official capacity,
JUSTIN RAY ORMOND in his official capacity, M. BLACKWELL in her official capacity,
M. WASHINGTON in his official capacity under the Federal Tort Claims Act, 28
U.S.C. §§ 2671, et seq., for monetary damages at a minimum for $5 million dollars
for the negligent, and continuing negligent and tortious acts stated herein as
well as injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Plaintiff avers based on personal knowledge as to his own acts, acts witnessed
as being done by and to others including the defendants, or otherwise upon information
and belief:

1

## JURISDICTION AND VENUE

1. This action is brought pursuant to 28 U.S.C. §§ 2671, et seq., the Federal Tort Claims Act ("FTCA") for relief from the commission of tortious acts alleged herein.

2. Plaintiff seeks injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure (Fed.R.Civ.P).

3. Plaintiff has exhausted all administrative remedies.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (e) because, among other things, a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Pennsylvania.

## PARTIES

5. Plaintiff ISTVAN MERCHENTHALER ("Istvan") is a citizen of the United States.

6. Defendant UNITED STATES OF AMERICA is made a party to this action pursuant to the provisions of 28 U.S.C. § 2671, et seq.

7. The United States of America is the appropriate party with certain exceptions, for injuries caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his or her employment, in accordance with the law of the state where the act or omission occurred.

8. The United States is the appropriate party for injuries caused by investigative or law enforcement officers arising out of negligence, negligent supervision, and malicious prosecution.

9. The FEDERAL BUREAU OF PRISONS is an agency within the meaning of 5 U.S.C. § 552(e) of the defendant UNITED STATES OF AMERICA. The Federal Bureau of Prisons (BOP) is responsible for maintaining the accuracy of information in their files to assure fairness to individual prisoners as part of their statutory duty of care.

9a. Defendant M. Washington is the Associate Warden, As associate Warden, Defendant acts as Warden in the absence of the Warden, and supervises the daily operation of the institution, including supervision of the institution staff. At all times relevant, this defendant was acting within the scope of his employment with the consent and permission of the United States. The defendant is sued in his official capacity.

2

10.  The employees of the BOP are considered investigative and law enforcement officers under 28 U.S.C. § 2680(h).  Because BOP employees are considered investigative and law enforcement officers, the United States is the appropriate party for injuries caused by the negligent or wrongful acts or omission of BOP employees.

11.  Defendant AMY FOURA-WHITE ("White") is Plaintiff's assigned case manager at LSCI Allenwood.  As case manager WHITE is responsible for all casework services and prepares classification material, progress reports, release plans, correspondence and other materials related to the inmate's commitment.  The Case Manager is supervised by the Unit manager.  White is also responsible for the inmate case file maintenance.  White is accountable to Beaver, Blackwell, D. White and Ormond as well as the United States for the erroneous use of inaccurate information against prisoners.  At all relevant times, White was acting within the scope of her employment with the consent and permission of the United States.  This defendant is sued in her official capacity.

12.  Defendant B. BEAVER ("Beaver") is the Unit Manager.  As Unit Manager, Beaver is the administrative head of the general Unit and oversees all Unit programs and activities.  The Unit Manager is the department head at the institution. The Unit Manager reviews all team decisions.  Beaver is known by the inmates as a chronic liar and repeated tell lies and makes false statements to cover-up negligence and issues that could become potential liability to him and others. Beaver is responsible for supervising White and ensuring she follows BOP rules and her decisions affecting inmates and correct the use of erroneous use of inaccurate information against inmates.  At all relevant times, this defendant was acting within the scope of his employment with the consent and permission of the United States.  This defendant is sued in his official capacity.

13.  Defendant DOUGLAS K. WHITE ("D. White") is the Warden.  As Warden D. White is responsible for the supervision of B. Beaver and White.  D. White is also responsible for the day-to-day operation of LSCI Allenwood, including it's management, staffing, and prisoners.  D. White exercises dominion, control over the staff and inmates.  As Warden, D. White has a duty to promptly investigate claims by inmates regarding the use of false information, negligence by staff, misconduct, or records containing erroneous information.  D. White is the reviewer and auditor/ signature authority for materials prepared by White and Beaver.

3

At all relevant times, this defendant was acting within the scope of his employment with the consent and permission of the United States. This defendant is sued in his official capacity, as he was acting within the scope of his employment.

14. Defendant M. BLACKWELL was the acting Unit Manager. As Acting Unit Manager Blackwell had the same duties and responsibilities of Beaver. At all relevant times, this defendant was acting within the scope of her employment with the consent and permission of the United States. This defendant is sued in her official capacity.

15. Defendant JUSTIN RAY ORMOND ("ORMOND") is the Regional Director for the Northeast Region ("NERO"). As the Director for NERO, he exercises control, dominion, supervision, management and directs the daily operation of LSCI Allenwood. Absent the Warden, Ormond acts as Warden. Ormond is also responsible for investigating and responding to Administrative Remedies of misconduct, use of erroneous information against inmates. Ormond has improperly delegated such authority to an unauthorized person to deprive inmates of obtaining relief. At all relevant times, this defendant was acting within the scope of his permission and consent of the United States. This defendant is sued in his official capacity.

FACTUAL BACKGROUND

A. STATUTORY AND REGULATORY FRAMEWORK

16. Case Managers like White is responsible for the accuracy of the inmate's records and maintaining it's accuracy and completeness. White shares that responsibility with Beaver, Blackwell, D.White and ormond to ensure that inmate records are maintained accurately, and erroneous information is not used to adversely affect their custody. White is responsible for inmate classification under the supervision of Beaver, Blackwell, D. White Ormond. They in turn are responsible to the Untied States.

17. Pursuant to 18 U.S.C. § 4042, the defendants owe a duty of care to federal prisoners.

18. Pursuant to BOP Program Statement ("PS") 5100.08 explains that inmates are classified into one of five security levels, namely minimum, low, medium, high and administrative based on the level of security and staff supervision

4

is able to provide. See PS 5100.08, Chapt. 1, Page 1. BOP inmates are classified based on factors such as the level of security and supervision the inmate requires and the inmate's programming needs. The initial classification is done in accordance with "information from the sentencing court, the U.S. Probation Office, the U.S. Marshalls or U.S. Attorney's Office about the inmate into a computer database called SENTRY. Any changes made in SENTRY are recorded in the Inmate Activity Record ("IAR"), a chronological listing of all changes and updates to the inmate record.

19. A Public Safety Factor ("PSF") is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public. PSF are normally applied on the Inmate Load and Securtiy Designation Form (BP-337) prior to an inmate's initial assignment to an institution. However, additions or deletions may be made at anytime thereafter in the Custody Classification Forms based on specific criteria's outlined in PS 5100.08.

20. A management variable ("MGTV") is suppose to reflect and support the professional judgment of Bureau staff to ensure the inmate's placement in the most appropriate level institution. A Management variable is required when placement has been made and/or maintained at an institution inconsistent with the inmate's security score -- a score which may not completely/ accurately reflect his or her security needs. There are specific requirements in order to assign management variables. A PSF is the same or equivalent of a MGTV, the only difference is there is a review and audit process of a PSF, versus a MGTV staff can abuse their discretion and use erroneous information to justify it as it is now reviewed by independent or disinterested individuals whom may not like or take issue with a particular inmate.

21. BOP PS 3420.11 is the BOP Employee Standards of Conduct which outlines the responsibilities and obligations of each BOP employee which they are required to follow and adhered to including White, Beaver, Blackwell, D. White and Ormond. Each employee signs an acknowledgement form which confirms their receipt of these rules and regulations and the employee's agreement to abide and uphold those rules. Certain conduct of employees are deemed violations of those Standards and are outlined in Attachment A on PS 3420.11.

22.  Each BOP employee executes a SF-61 Affidavit of Appointment, Oath of Office agreeing to obey the Constitution and laws of the United States. The BOP program statements are laws of the United States. "[A]n inmate is entitled to expect that the BOP to follow it's own policies." Anderson v. Smith, 697 F.2d 239 (8th Cir. 1983); Abraham v. United States, 465 F. Supp. 610 (D.C. Cir. 1979)(BOP Program Statement and other Justice Department Rules are considered laws of the United States).

23.  The duty of each BOP employee provides that it must maintain all records with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

24.  That duty requires as long as the information contained in the BOP files is capable of being verified, the BOP must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the BOP willfully or intentionally, negligently fails to maintain its reocrds it will be liable to that person for damages under the Federal Tort Claims Act. United States v. Jones, 91 F.3d 623 (3rd Cir. 1995)(applying federal duty of care to negligence claim of federal prisoner).

### B.  UNREBUTTED FACTS ESTABLISHED THROUGH ADMINISTRATIVE REMEDY EXHAUSTION

25.  ISTVAN is a federal prisoner currently confined at LSCI Allenwood. Istvan was designated by the Designation and Sentence Computation Center ("DSCC") after he was sentenced to Allenwood. At that time, DSCC initially placed a MGTV variable on him based on inaccurate information contained in his Presentence Investigation Report which was expired on January 28, 2017.

26.  On February 28, 2017 White informed Plaintiff that she submitted him for placement at a camp, minimal custody which she verbally confirmed on February 28, 2017. On March 2, 2017 Plaintiff was advised that he was designated to a prison camp.

27.  On March 3, 2017 Plaintiff was advised to pack out his property as he was being called back to Court via a Writ. As of March 6, Plaintiff was still designated to a camp and a Writ to Court does not impact a redesignation to another institution. The Designation information is verifable via SENTRY

via the Inmate Activity Screens.

28. On March 18, 2017 White applied a MGTV to expire on May 31, 2018 with the knowledge, consent and permission of Beaver. White did not seek D. White signature as required on the Form 409 form. The application of the MGTV cancelled the designation to a camp. Plaintiff asked White the reason for the MGTV, she replied "you are a threat to your community based on what I read in your PSI regarding your wife's accusations of abuse." White also informed Plaintiff, "if you were in my house, you would not last through the night. She indicated she was a victim of abuse."

29. In May, 2017 Beaver in reviewing what White had done, the MGTV, advised "you[Plaintiff] will be reevaluated for "gate pass" or "minimum security level" institution in May 31, 2018.

30. In February, 2018 White informed Plaintiff that she had no problem submitting paperwork to a prison camp, once the MGTV expires. A recommendation was submitted by Dr. Ann Marie Bruno, a psychologist at the institution, for placement at Cumberland Camp.

31. During Plaintiff's Team Review on August 21, 2018 it was discovered that White had put a "GRTR SECU" MGTV on Plaintiff as of 5-1-2018 without notifying Plaintiff and contrary to her representations made in February, 2018. The current MGTV expires 04-30-2020. White advised Plaintiff that he will never see a prison camp. Plaintiff alleged as part of the administrative remedy process that White's actions is nothing but arbitrary, capricious and in violation of law and inconsistent with BOP standards.

32. White's actions are no different that of other staff members including Beaver, Curt Rothermel, Ms. Hause, T. Wright to name a few who regularly abuse their authority to retaliate against inmates such as putting them on gate pass to deny them access to prison camps or closer to their family by manipulating the management variable system and submitting false information to keep them here which is not reviewed or approved by DSCC or any other reviewing authority other than the institution and is capable of being abused.

33.  In January, 2018 Plaintiff was resentenced in which sentences to three counts were reduced by 27 months.  The Court issued a new judgment and commitment order/amended.  In addition the Presentence Investigation Report removed a number of lines which relate to allegations of abuse by Plaintiff's.  Upon investigation, Plaintiff's ex-wife recanted her statements and admitted that they were untrue.  This was the basis of White adding a MGTV on May 31, 2018.

34.  In August, 2018 Plaintiff began investigating the facts and circumstances surrounding White and Beaver's actions.  On August 24, 2018 Plaintiff submitted an Inmate Request to Beaver requesting a copy of his Form 409 which would be completed upon the placement of a management variable and requires the signature of the Case Manager, Unit Manager and Warden.  Plaintiff also requested a copy of his progress report from his Team meeting on August 21, 2018 which White has refused to provide to inmates despite federal regulations requiring that inmates be offered a copy.  See Exh. '1', '2', '3',

35.  Beaver lied to Plaintiff indicating that the Form 409 was FOIA exempt to conceal the ongoing misconduct at LSCI Allenwood of improperly adding management variables without review from DSCC or anyone outside the institution which was being applied in an arbitrary and capricious manner.  See Exh. 2,3.

36.  On January 30, 2018 DSCC received Plaintiff's amended judgment and commitment order along with a copy of his amended presentence investigation report.  DSCC forwarded the information to the institution, to White for updating to the inmate's sentence.  White failed to update the information.  On March 27, 2018 DSCC became involved and corrected the information.  Exh. '7'.

37.  Pursuant to 28 CFR § 513.40 requires inmates have access to their Inmate Central File which includes, but are not limited to, documents relating to the inmate's sentence, detainer, program participation in Bureau programs, classsification data (management variables, transfers, Form 409, etc), parole, mail, ....release processing...  This information is available without filing a FOIA request and accessible via the "simple access" method by submitting a request to staff and staff are requred to schedule the inmate for review "as promptly as is practical."

8

38.  Pursuant to PS 5800.17, Inmate Central File, ¶ 11(d) staff can provide copies of documents in their inmate central file.  Attachment A of the program statement provides in Section Two: (b) - Classification and Parole Materials ... items (4) Request for Transfer (all), (5) Request for Management Variable Application/Updated Expiration Date or PSF Waiver (all)..are disclosable documents stored in Section Two.

39.  In order to perpetuate the fraud and negligence of all the case managers, unit managers, associate wardens, warden and regional director, they repeatedly lied to inmates  tell inmates that their 409 which is the same form for the management variable is non-disclosable so they can conceal, that DSCC is not in fact reviewing and approving the placement of inappropriate management variables but is rather the arbitray and capricious actions of staff members like White, Beaver, D. White and Ormond, who negligently fail to properly supervise the staff and ensure they adhere to the BOP guidance.  As demonstrated by Exh. '4' in response to Plaintiff's BP9, the knowingly, intentionally, willfully and wantonly subcribed in an official proceeding and agency record, a false statement and lie that "Designation Sentence and Computation Center (DSCC) upheld the Greater Security Management Variable and applied an expiration date." DSCC never received a copy of the 409, nor did they approve the application of a management variable per policy statement PS 5100.08.  False statements are punishable under 18 U.S.C. § 1001 with up to five years imprisonment, and a $250,000 fine or both.   It is also a violation of the Employee Standards of Conduct, PS 3420.11, #37..falsification, misstatement, exaggeration, or concealment of material fact in connection with ...any record, investigation or other proper proceeding."  The Administrative Remedy Program is a record, PS 1330.18 requires an investigation by the Warden, Regional Director, and ultimately the Administrative Remedy after exhaustion ends up in a court proceedings.

40.  Beaver, Associate Warden M. Washington, and D.White are the worst offenders of perpetuation of false statements and lies to inmates.  Recently, Beaver used verbally abusive language towards inmate Juan Polanco with Curt Rothermel (a racist, who discriminates against the jews and other minorities) present.  Beaver then lied to the Associate Warden about what happened.  The

incident was witnessed by numerous inmates in the mess hall.  When Mr. Polanco
complained to the warden about his responsibility, he past the buck to the
Associate Warden who called Polanco a liar after Beaver told him a lie about
what happened.  Interestingly the matter at issue was the same assignment of
a management variable where Beaver, Washington, and D. White attempted to
obstruction and deny Polanco access to the administrative remedy.  See Exh.
'8' - copy of files from the Bureau of Prisons records of the incident that
took place.  The next day, D.White and Washington retaliated against Polanco
and placed him in the Special Housing Unit in violation of Federal regulations
and BOP policy, not to mention the Employee Standards of Conduct, while the
Regional Director was no where to be found despite his personal knowledge of
the abuse.

41.  As demonstrated by Exhibit '5' is further negligence of defendant
Ormond.  Under the administrative remedy program 28 CFR 542.11(a) the Warden
and Regional Director are required to conduct an investigation into each request
or appeal.  Section (4) at the regional level requires that the Regional Director
or deputy regional director sign administrative remedies responses or those in
an acting capacity.  As demonstrated by Exhibit '5', Ormond ignored his
responsibility under the Administrative remedy program and improperly delegated
to an unauthorized staff Darrin Howard who was not in an acting capacity to
remain ignorant and aid the institution in covering up misconduct being reported
on institution staff.

42.  As demonstrated by Exhibit '5' no investigation was conducted, nor
was any justification identified for the management variable.  Moreover, the
regional response did little to address the false statements by D. White.
HHow can a lie be said to "Warden adequately address" my concerns?

43.  As demonstrated by the Progress Report dated August 21, 2018 attached
and incorporated herein as Exhibit '1' White negligently failed to update Plaintiff's
sentence information based on the amended judgment issued in January, 2018
which was forward to the institution along with the PSR.  As denoted on the
Progress Report the court can glean the discrepancies as of August 21, 2018
which formed the basis for the management variable assigned by White on May
1, 2018.  Moreover, White used the old PSR information and her hatred towards
Plaintiff to add the management variable.

10

44.  Contradicting the need for a management variable is demonstrated further by Exhibit 1, where there are no noted issues or concerns by staff of anything that Plaintiff has done to warrant a management variable.

45.  As demonstrated by Exhibit '2' are correspondences with Beaver regarding Plaintiff's request for a copy of his 409, progress report which White refused to provide.  Beaver misleads Plaintiff that a FOIA request is needed.  Certainly a qualified Unit Manager and Case Management Coordinator would know which documents require FOIA or not as it is clearly written in the policy statements.  When Plantiff requested the exemption number claimed for making the document exempt, Beaver did not respond to the request. id.

46.  Upon Plaintiff discovering the errors, he identified the negligence of White.  See Exh '3'.  In an effort to cover-up for White, Beaver began asking for Plaintiff's probation officer which is already in his inmate central file and DSCC had already provided the institution with an updated PSR.  This was done to mislead Plaintiff to being the process of covering up for White and the institutions negligence.

47.  Plaintiff submitted his BP9 to the Warden, in which the Warden made false statements that DSCC had updated a management variable, after Beaver and White conspired to manipulate SENTRY that some update was submitted to DSCC. As Warden, D.White should have known of the misconduct upon his investigation, her certainly should have known that he did not sign a 409 to send to DSCC, and that management variables are not approved by DSCC, a lack of knowledge thereof would demonstrate someone who is unqualified to be in such a position. Exh. '4'

48.  As demonstrated by Plaintiff's BP10, the Regional Director's office perpetuated the false statements and misconduct of the institution by failing to investigate the facts and provide a responsible that was truthful and accurately reflect the facts.   Exh '5'.

49.  As demonstrated by Exhibit '6' is Plaintiff's BP-337 which was manipulated to reflect a form date of October 9, 2018 to fabricate a new 409 form which would have shown White's negligence of using inaccurate and false information to add a management variable back as of May 1, 2018.  Moreover, the information still incorrectly lists Plaintiff offense as High when it should be moderate based

BOP PS 5100.08. Attachment A.

50.  As demonstrated by Exhibit 7 is Plaintiff's sentence computation which on page 5 notes that DSCC received information from the Courts on January 30, 2018 and updated Plaintif's sentence computation.  On March 21, 2018 additional changes were made.

51.  **Plaintiff** incorporates as Exhibits herein if not previously done as  if fully stated and set forth.

52.  Defendant White used erroneous information to assign a management variable based on her failure to ensure that Plaintiff's file both in SENTRY and paper were accurate, relevant and completeness.  As a result of her failure to maintain those records, she negligently used that erroneous information to assign an inappropriate management variable.  Her guilt and negligence is further demonstrated by her further manipulation of SENTRY on October 9, 2018 to create the appearance that she had submitted some kind of paperwork to DSCC.  It was further negligent for Beaver and White to conspire to cover-up their misconduct and allow the Warden to make false statements in Plaintiff's administrative remedy proceeding to cover-up the negligence.

53.  The failure of Beaver, D. White and Ormond to properly supervise White constitute negligence supervision.  Such negligence is demonstrated by them aiding and abetting the misconduct and cover-up as well as perpetuate a lie that a management variable was upheld by DSCC when no such paperwork or request was made to DSCC.  They were also negligent in the failure to ensure that institution do not lie to inmates about needing to submit a FOIA request to obtain their 409 which assigned management on an arbitrary and capricious basis and falsely stating that DSCC approved it and misleading inmates that DSCC is the one approving them.  It was also negligent for failure of D. White and Ormond to perform their duty and obligation.

### COUNT I - NEGLIGENCE

54.  Plaintiff re-alleges paragraphs 1 through 53 as if fully set forth here.

55. This claim is brought pursuant to 28 U.S.C. § 2671, et seq.

56. The UNITED STATES OF AMERICA is responsible for the acts of their agents, officers, servants, and employees under the doctrine of respondeat superior.

57. The actions of WHITE, BEAVER, D.WHITE, and ORMOND set forth in paragraphs 1 thru 53 constitute negligence in violation of Pennsylvania common law. White, BEAVER, D.WHITE, and ORMOND had a duty to ensure that Plaintiff's records were accurate, relevenat and complete. WHITE, BEAVER, D.WHITE and ORMOND breached that duty when WHITE used the erroneous information, abusing her discretion and that resulted from her failure to do her job, and ORMOND, D.WHITE, BEAVER were negligent in aiding and abeeting her negligence by making false statements in an attempt to cover it up when they realized she was negligent.

58. WHITE, BEAVER, D.WHITE and ORMOND failed to properly record and maintain records pertaining to Plaintiff and allowing an erroneous management variable to be placed on his SENTRY file.

59. This breach of duty constituted negligence in violation of Pennsylvania common law and was the direct and proximate cause of Plaintiff's pain and injury. Under the FTCA defendant UNITED STATES OF AMERICA is liable to plaintiff for the unlawful acts of WHITE, BEAVER, D.WHITE, M.WASHINGTON, and ORMOND as they were acting within the scope of their employment with the consent and permission of the United States as law enforcement officers of the BOP.

60. WHITE, BEAVER, ORMOND, D.WHITE and M.WASHINGTON willfully, deliberately, maliciously, and wantonly failed to properly record and maintain the records after Plaintiff filed numerous requests and inmate grievances.

61. As a direct, proximate, and reasonably foreseeable result of the actions of WHITE, BEAVER, D.WHITE, ORMOND and M.WASHINGTON, plaintiff has suffered damages including pain and suffering, mental anguish, all of which are continuing or are permanent in nature.

WHEREFORE, Plaintiff demands judgment against the Defendant UNITED STATES OF AMERICA for compensatory and punative damages, interests, costs and such

further relief as the Court deems proper to deter such future misconduct and negligence.

## COUNT II - NEGLIGENT SUPERVISION

62.  Plaintiff re-alleges paragraphs 1 thru 61 as if fully set forth herein.

63.  This claim is brought pursuant to 28 U.S.C. § 2671, et seq.

64.  The UNITED STATES OF AMERICA is responsible for the acts of their agents, servants, officers, and employees under the doctrine of respondeat superior.

65.  BEAVER, D.WHITE, M.WASHINGTON AND ORMOND owe a duty of ordinary care to ensure that WHITE did not fail to properly maintain or record an erroneously placed management variable based on her hatred and personal views as well as false information to place a management variable. Defendants BEAVER, D.WHITE, M.WASHINGTON and ORMOND not only allowed White to place a management variable that was inappropriate in this case, but aided and abetted the cover-up and unlawful acts by making false statements and fabricating documents to support the cover-up in aid of fraud. BEAVER, D.WHITE, M.WASHINGTON failed to train and supervise its employees with respect to continous abuse of authority, staff misconduct, and to properly maintain and record those incidents.

66.  Defendants BEAVER, D.WHITE, M.WASHINGTON and ORMOND willfully, knowingly, maliciously and wantonly failed to properly ensure that White did not fail to maintain and record accurate information regarding the plaintiff and using that inaccurate information to affect Plaintiff adversely.

67.  This breach of duty constituted negligent supervision in violation of Pennsylvania common law and was the direct, proximate and reasonably forseeable result of the actions of WHITE. Plaintiff has suffered damages, including pain and suffering, mental anguish, all of which are continuing and permanent.

WHEREFORE, Plaintiff demands judgment against the UNITED STATES OF AMERICA for compensatory and punative damages, interests, costs and such further relief as the Court deems proper to deter such future misconduct and negligence.

## COUNT III - MALICIOUS PROSECUTION

68.  Plaintiff re-alleges paragraphs 1-67 as if fully set forth herein.

69.  This claim is brought pursuant to 28 U.S.C. § 2671, et seq.

70.  The UNITED STATES OF AMERICA is responsible for the acts of their agents, officers, and employees under the doctrine of respondeat superior.

71.  BEAVER, D.WHITE, WHITE, M.WASHINGTON and ORMOND owed a duty of ordinary care to ensure that Plaintiff is not maliciously prosecuted for the illegal acts of WHITE, BEAVER, D.WHITE, M.WASHINGTON and ORMOND.  When WHITE aided and abetted by BEAVER, D.WHITE, M.WASHINGTON and ORMOND fabricated, falsified Plaintiff's BOP records to cover-up her illegal acts, prosecuted Plaintiff, then added a management variable and had others lie for her.

72.  WHITE, BEAVER, D.WHITE, M.WSHINGTON and ORMOND had actual or constructive knowledge that Plaintiff should not have been classified with a management variable, yet took no action as required by their duty, instead they encouraged such behavior. Plaintiff has consistently reminded WHITE, BEAVER, D.WHITE, M.WASHINGTON and ORMOND acted with legal or actual malice when placing and allowing the management variable to be applied to plaintiff and hundreds of others.  There is ample evidence that WHITE, BEAVER, D.WHITE, MWASHINGTON, and ORMOND acted with malice, and further demonstrated by the ensuing cover-up, and false statements.

73.  As a direct, proximate, and resonably foreseeable result of the malicious actions of WHITE, BEAVER, D.WHITE, M.WASHINGTON AND ORMOND, plaintiff has suffered damages, including pain and suffering, all fo which are continuing or are permanent in nature.

WHERFORE, Plaintiff demands judgment against the defendant UNITED STATES OF AMERICA for compensatory and punative damages, interests, costs and such further relief as the Court deems proper.

COUNT IV - INJUNCTIVE RELIEF

74.  Plaintiff re-alleges paragraphs 1 thru 73 as if fully set forth herein.

75.  Plaintiff and defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of an injunction.

76.  A failure to enjoin the defendants unlawful conduct as well as criminal behavior has and will continue to cause Plaintiff and the 1340 plus inmates at LSCI Allenwood to suffer injury in that it will result in the deprivation of rights and protections against the abuse of authority, actions by individuals that are otherwise contrary to law, arbitrary, capricious, and criminal.

77.  A failure to enjoin the defendants from their criminal violations of federal law, BOP Standards of Conduct, human decency, abuse of authority has and will continue to cause injuries to the 1340 plus inmates as well as poses an severe threat to the safety, security and orderly running of the institution. Inmates are being severely injured, illegal detained without due process protections, continuingly retaliated against and threated into submitting to the will of the defendant's wanton and brazen misconduct and violation of criminal laws of the United States without any concern or thought of the consequences.

78.  A failure to enjoin the defendants serves only to continue to embolden others to act in a similar manner without consequences.

79.  A failure to ejoin the defendants will continue to cause physical, mental, emotional and other harms at the hands of the defendants and others embolden by their actions.

80.  The defendants continue to threaten and cause physical injuries to inmates each and every day.

81.  No adequate remedy at law exists as others who are suppose to take immediate action, have negligently failed to perform their essential functions of oversight and bare minimum supervision.

82.  Defendant's unlawful conduct will also  aderversely affect the interests of the 1340 plus inmates without serving or advancing the public interests.

83.  Plaintiff is entitled to injunctive relief enjoining the Defendants from continuing their unlawful practice, pattern and custom of conduct as alleged and not alleged in this complaint, including assaults by staff on inmates, illegal detention in the Special housing Unit in violation of federal regulations and denial of due process, the continuing threats and intimidation, the brazen false statements made in connection with official proceedings, the criminal conduct of threating federal prisoners with physical harm and illegal detention as well as actions that embolden others to act in the same manner.

84.  The Defendants have no protectable interest in the continuation of their illegal and unlawful conduct.

85.  Pursuant to Rule 65, Federal Rules of Civil Procedure, the Plaintiff requests:

    a.  an injunction requiring the defendants to remove the management variables imposed as a result of arbitrary, capricious conduct, in violation of federal regulation and BOP policy within the last 24 months; to immediately disclose to any inmate their Form 409 in compliance with Federal regulation and BOP Policy;

    c.  the Court issue an order requiring the Office of the Inspector General immediately begin an investigation into the criminal conduct of the defendants and others who on a regular basis abuse their authority, have knowingly and intentionally caused phsyical injury to inmates and incited others to do so;

    d.  the IG's investigation include the making false statements punishable under 18 U.S.C. § 1001;  the terroristic threats against federal prisoners of physical harm and illegal detention, such as D.White telling one prisoner "the only way you are getting out of gate pass is a stretcher.";

    e.  Threating inmates with punishments for reporting staff misconduct;

    f.  The IG appoint a special case manager to review each of the inmates' issues independently of which there are some 300 to 400 affect inmates with issues related to the abusive use of management variables;

    g.  The IG review the falsification of Bureau records;

17

h.  The Bureau of Prisons Acting Director appoint interim Warden, Associate Warden, CMC and immediately remove D.White, White, Beaver, M. Washington, and Curt Rothermel pending the outcome of the IG investigations;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfull requests that the Court:

a.  Enjoin the defendants to remove management variables assigned to the federal prisoners based on false statements that DSCC approved and upheld it, which is an  utter false statement in violation of 18 U.S.C. § 1001.

b.  Issue an order requiring the Office of Inspector General for the BOP begin an investigation into the immediate threat that these individuals posed to the rule of law,  ethical standards of the BOP, criminal conduct, and abuse of authority as well as the terroristic threats and false imprisonment of 100's of inmates who report staff misconduct and abuse;

c.  Enjoin and restrain Defendants, their agents, employees, successors, and all persons acting in concert or participating with them from continuing the pattern, practice and custom in violation of the Constitution, laws of the United States, BOP policy, and federal regulations including the acts complained of in this complaint.

d.  Enter judgment for compensatory damanges on each of the counts alleged herein;

e.  A jury trial to determine the amount of punative damages to deter misconduct and the illegal, criminal and unlawful acts of the defendants in the future;

f.  Award Plaintiff costs of litigation;

g.  Hold Defendants White, D. White, Beaver, Ormond, M. Washington accountable for their negligent conduct, criminal acts and enter judgment against the UNITED STATES OF AMERICA for compensatory damages;

h.  Any further relief the Court deems just, proper and equitable.

Dated: 12 March, 2019.

I declare the foregoing to be true and correct to the best of my knowledge, own acts, information and documents reviewed, upon information and belief under the penalty of perjury.

Respectfully submitted,

Istvan Merchenthaler,
#68235-066
LSCI Allenwood
P O Box 1000
White Deer, PA 17887

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ISTVAN MERCHENTHALER,          )
                               )
                Plaintiff,     )
                               )
        v.                     )     Civil Action No. _____
                               )
                               )
UNITED STATES OF AMERICA, et al. )   28 U.S.C. 1657(a) EXPEDITE
                               )
                Defendant      )
                               )

EXHIBITS IN SUPPORT OF MATERIAL FACTS

1.  Declaration of Istvan Merchenthaler;  [2 pages]

2.  Progress Report as of 8/21/2018 [4 pages]

3.  Email to Beaver dated 8/24 [4 pages]

4.  Email to Beaver 8/27/18 [1 page]

5.  BP9 w/attachments/response [3] - Warden's office

6.  BP10 w/ attachments/ response [2] - Regional Office

7.  Custody Classification Form BP-337/338 [1]

8.  Sentence Computation as of 3/08/2019 with notations in Remarks section

9.  Abuse of Authority, Inmate Polanco by D.White, White, M. Washington,
    Beaver causing illegal detention in the SHU after obstruction of admin.
    remedy process;

10. Holloway - false statements in connection with adminstrative remedy,
    when Warden confronted about false statements, staff reject the filing
    of the misconduct

Respectfully submitted this 12 day of March, 2019.

Istvan Merchenthaler
#68235-066
P O Box 1000
White Deer, PA 17887

DECLARATION IN SUPPOPRT

ISTVAN MERCHENTHALER'S DECLARATION IN SUPPORT OF COMPLAINT

I, Istvan Merchenthaler being duly depose state:

1. My name is Isvtan Merchenthaler. I am over the age of 18 years of age. I am a federal prisoner, model one that has been confined at LSCI Allenwood. I am fully competent to make this Declaration and I have personal knowledge of the facts stated in this declaration. To my knowledge, all of the facts stated in this Declaration are true and correct.

2. I am the plaintiff in the action in which this affidavit is being submitted.

3. Family contact and visitation are very important to federal prisoners for any number of reasons according to the Bureau of Prisons. My son suffers from Aspergers and as a result he cannot function in the visitation area of a low security institution.

4. While I am a federal prisoner, I have no violence in my history nor have I committed any violent acts and according to the Bureau's own policy statement and guidance, absent arbitrary and capricious actions complained on in this filing, by any sound correctional sound judgment, I should have been eligible for a fair consideration of a transfer to a minimum security prison for the purposes of faciliting visitation with my son to foster a continuing relationship. An absent father can have devastating effects on a young child, especially suffering from Asbergers.

5. The ability not to be able to visit with my son as a result of the misconduct and abuse of authority complained of as a result of negligence has had a devastating effect on me mentally, socially, and physically.

6. Even my family worries about me not being able to see my son. The actions of the defendant's in this matter has also severely impact my family as my mother continously stresses and worries about me not being able to see my son.

7. I also suffer from PTSD which furthers the damages and effects of the circumstances alleged in this complaint to the point of sleepness nights, constant worry.

8.  At the trial, I will present testimony from expert witnesses such as Dr. Gilman a former psychologist at Allenwood, Dr. Ann Marie Bruno and others about the damages caused by the defendants as a direct, proximate result of their negligence, abuse of authority.

9.  These experts will provide the Court a view of the physical, psychological and deterioting effects that as a result of the defendant's acts have on inmates and third parties for whom they have little to no concern about their illegal actions as the Government will also protect them and when that fails, the have the Unions that cover for the negligent conduct.

FURTHER SAYETH NAUGHT.

I declare the foregoing to be true and correct under the penalty of perjury.

Dated: 12 March, 2019

_____
Istvan Merchenthaler

ISTVAN A. MERCHENTHALER 68235-066
FEDERAL CORRECTIONAL COMPLEX - ALLENWOOD LOW
LOW SECURITY CORRECTIONAL INSTITUTION
P. O. BOX 1000
WHITE DEER, PA 17887

USMS X-RAY

RECEIVED
SCRANTON

MAR 15 2019

PER _____ DEPUTY CLERK

LEGAL MAIL